(C. D. 224)

T. Buettner & Co., Inc., *v.* United States

United States Customs Court, Third Division

(Decided October 10, 1939)

*Curtis E. Loehle* for the plaintiff.

*Webster J. Oliver,* Assistant Attorney General (*Joseph E. Weil,* special attorney), for the defendant.

Before Cline and Keefe, Judges

Cline, Judge:  These suits against the United States, arising at the port of Chicago, were consolidated for trial.  The merchandise in issue consists of designs of tapestry stitches on ruled paper.  The articles covered by protest 969207–G were classified as manufactures of paper and returned for duty at the rate of 35 per centum ad valorem under

paragraph 1413 of the Tariff Act of 1930, while those covered by protest 962960–G were classified as Jacquard designs on ruled paper and returned for duty at 35 per centum ad valorem under paragraph 1409. The appraiser's report in the latter case indicates that the articles should have been returned at 35 per centum ad valorem under paragraph 1413.

It is claimed in the protests that the merchandise is dutiable at 20 per centum ad valorem under paragraph 1547 (b). The principal parts of the provisions herein involved read as follows:

PAR. 1409. Jacquard designs on ruled paper, or cut on Jacquard cards, and parts of such designs, 35 per centum ad valorem * * *.

PAR. 1413. * * * manufactures of paper, or of which paper is the component material of chief value, not specially provided for, all the foregoing, 35 per centum ad valorem * * *.

PAR. 1547. (b) Paintings in oil, mineral, water, or other colors, pastels, and drawings and sketches in pen and ink, pencil, or water color, any of the foregoing (whether or not works of art) suitable as designs for use in the manufacture of textiles, floor coverings, wall paper, or wall coverings, 20 per centum ad valorem.

The timely reports of the appraiser in the two cases constitute parts of the record. *M. Pressner & Co.* v. *United States*, 26 C. C. P. A. 186, C. A. D. 16. They read as follows:

PROTEST 962960–G. The merchandise in question consists of patterns or designs of tapestry stitches on paper, originally returned as Jacquard designs on ruled paper at 35% ad valorem under provisions of paragraph 1409 of the Tariff Act of 1930.

Subsequently sample submitted to the Customs Information Exchange by Examiner Seldon and same would now be advisorily classified under the provisions of paragraph 1413 at 35% as manufactures of paper not specially provided for.

PROTEST 969207–G. The merchandise in question consists of hand-painted designs on ruled paper for needlework stitches. Same was advisorily classified under the provisions of paragraph 1413 at 35% ad valorem as manufactures of paper.

At the trial a sample representing the shipments was introduced in evidence and marked "Exhibit 1." It consists of an oblong sheet of heavy paper, 8¼ by 6⅜ inches in dimension, in the center of which is printed an oblong diagram, 5⅝ by 3¾ inches in dimension, with lines printed both horizontally and perpendicularly throughout, making small squares over the entire surface, except a narrow space on each edge. In the center appears a colored pattern on the squares, making an ornamental design in the center of the card. Below this design and near the bottom of the squares appear five colored strips, the colors being the same as those used in the design. At the top of the exhibit above the squares appears the following:

Tapestry Stitch on 3377 Canvas Hand Painted Design No. 5591. Made especially for T. BUETTNER & CO. INC., CHICAGO, ILL.
Use NUN'S Mothproof Yarn, Art. 100 and Art. 101.

Henry R. Hantke was called as a witness for the plaintiff. He testified that he is the manager of the import department of T. Buettner & Co.; that the business of the firm is importing goods for the needlework trade and selling needlework materials; that Exhibit 1 is used as a guide or pattern to be worked on cotton canvas by hand needlework; that when completed the pattern will cover the entire surface of the canvas, using wool yarn of the colors shown in the design; that the material when completed is used to cover a chair, footstool, or couch cover; that the pattern on Exhibit 1 is not large enough to cover a chair or stool but it is repeated again and again on the canvas until the whole surface is covered with the design; that his firm sells these cards (Exhibit 1) and materials for making the complete fabric; that the needlework on the canvas when completed is called "gros point."

The witness produced a sample of the canvas upon which the needlework is stitched in making the completed fabrics and it was marked "Illustrative Exhibit A." It consists of a plain woven stiff fabric having small oblong open spaces throughout the entire surface. The exhibit appears to be of the same character and to be used in the same way as the canvas described in *United States* v. *Field & Co.*, 10 Ct. Cust. Appls. 183, T. D. 38550, and *United States* v. *John Wanamaker*, 16 Ct. Cust. Appls. 548, T. D. 43266. In those cases the canvas was used as a foundation fabric for embroidery in making tapestries.

The question before the court is whether ruled paper or cards having designs painted thereon in water colors are "suitable as designs for use in the manufacture of textiles," within the meaning of that provision in paragraph 1547 (b). There was a great deal of litigation concerning the classification of designs for use in making textiles, etc., under the Tariff Act of 1922, the principal question involved being whether or not the designs were works of art. In some cases the designs were held free of duty as original paintings, drawings, or sketches under paragraph 1704, citing *Cheney Bros.* v. *United States*, Abstract 49369, 47 Treas. Dec. 1064; *Hans Frick* v. *United States*, Abstract 1391, 50 Treas. Dec. 790; *Cheney Bros.* v. *United States*, Abstract 9081, 56 Treas. Dec. 707; *Elms & Sellon* v. *United States*, Abstract 10213, 56 Treas. Dec. 905; *Robert Ernst* v. *United States*, Abstract 8684, 55 Treas. Dec. 1147. In other cases the designs were held dutiable at 20 per centum ad valorem under paragraph 1449, citing *Elms & Sellon* v. *United States*, Abstract 9082, 56 Treas. Dec. 707; *Dornbusch Agency, Inc.*, v. *United States*, Abstract 16933, 60 Treas. Dec. 1193. In other cases the industrial designs were held dutiable as manufactures of paper under paragraph 1313 at 35 per centum ad valorem, citing *Klingenstein Bros. & Co.* v. *United States*, Abstract 52019, 49 Treas. Dec. 1268; *H. Maisch Bitschenauer* v. *United States*, Abstract

309, 50 Treas. Dec. 612; *United Piece Dye Works* v. *United States*, Abstract 1677, 51 Treas. Dec. 1033; *Marshall Field & Co.* v. *United States*, Abstract 5962, 53 Treas. Dec. 1010. In *H. W. Robinson & Co.* v. *United States*, Abstract 9083, 56 Treas. Dec. 707, such designs in water colors were held dutiable as drawings at 25 per centum ad valorem under paragraph 1310.

The decision in *Cheney Bros.* v. *United States*, Abstract 49369, *supra*, was called to the attention of Congress in a pamphlet printed for use of the Committee on Ways and Means in the House of Representatives when the bill which became the Tariff Act of 1930 was before the House. The pamphlet is entitled "Memorandum of Court Decisions affecting Tariff Act of 1922." It is suggested on page 66 that if the provisions of paragraph 1704 are not intended to cover paintings or designs for industrial purposes that the paragraph be amended by inserting the words "drawings," "sketches," and "articles for industrial use" in the clause in that paragraph excepting articles of utility. An examination of paragraph 1704 shows that the suggestion was adopted.

The provisions of paragraph 1547 were amended also by inserting subparagraph (b) in the bill prepared by the Committee on Finance of the Senate. A note under this subparagraph in the bill introduced by the Committee on Finance reads as follows:

NOTE. The articles provided for in this paragraph have been transferred from free list, House Bill, Par. 1802 (Senate Bill, Par. 1808, p. 359 of this print) and from various paragraphs, depending upon the nature of the article or the component material of chief value.

An examination of the hearings before the Committee on Finance of the Senate shows (pp. 800 to 818) that a number of witnesses appeared before the committee, some asking that industrial designs remain on the free list and others asking that they be made subject to duty. It would seem from the action of Congress above described that it intended to settle the controversy concerning the classification of all such designs. By making a special provision for such designs in paragraph 1547 (b) and excluding the same from paragraph 1807 as above indicated, the Congress did more than was suggested in the pamphlet entitled "Memorandum of Court Decisions Affecting Tariff Act of 1922." The question of whether or not they are works of art does not arise because paragraph 1547 (b) contains a specific provision for such designs "whether or not works of art."

In the Summary of Tariff Information, 1929, Jacquard designs and Jacquard cards are described on page 1852 as follows:

Description and uses. Jacquard designs are drawings with specification data, from which cards are cut for use in obtaining a design in a fabric, produced with a Jacquard attachment. The design is transferred to Jacquard cards by perforating machines. The cards are made of tough, stiff jute on pressboard, to withstand wear while in use on the loom.

It´is obvious from this definition that the articles herein involved are not the Jacquard designs provided for in paragraph 1409 because they are for use in hand needlework and not for use in connection with Jacquard looms in weaving cloth.

The provision for manufactures of paper in paragraph 1413 is qualified by the term "not specially provided for." Therefore, if the designs herein involved are provided for elsewhere in the tariff law they are not dutiable under paragraph 1413.

In the case of *Sloane* v. *United States*, 7 Ct. Cust. Appls. 463, T. D. 37049, the court held that fabrics made by the same method described by witness Hantke in this case, in explaining how Exhibit 1 and Illustrative Exhibit A were used, were tapestries. Therefore the designs in this case are imported for use in the manufacture of fabrics because tapestry is a fabric.

We find that the articles herein involved are suitable for use in the manufacture of fabrics and are so used, and we hold that they are specially provided for in paragraph 1547 (b) of the Tariff Act of 1930. The protests are sustained. Judgment will be entered in favor of the plaintiff.